UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JOSEPH KEVIN CORDELL, JR., ) | Civil Action No.: 4:21-cv-01224-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **ORDER** |
| KILOLO KIJAKAZI,[1] ) | |
| Commissioner of Social Security; ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

      This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant voluntary consent pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

**I. RELEVANT BACKGROUND**

**A.    Procedural History**

      Plaintiff filed an application for DIB and SSI on June 20, 2018, alleging inability to work since May 10, 2018. (Tr. 16, 214-32). His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a rehearing. A hearing was held in November 2019, at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued

---

[1] Kilolo Kijakazi is the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted for Defendant Andrew Saul, who was the Commissioner of Social Security when this action was filed.

an unfavorable decision on January 8, 2020, finding that Plaintiff was not disabled. (Tr. 16-26). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on February 22, 2021, making the ALJ's decision the Commissioner's final decision. (Tr. 1-4). Plaintiff filed this action in April 2021. (ECF No. 1).

**B.    Plaintiff's Background and Medical History**

Plaintiff was born on November 30, 1975, and was forty-two years old on the alleged disability onset date. (Tr. 24, 214). Plaintiff alleges disability originally due to herniated disk, scoliosis, back problem, neck problem, rheumatoid arthritis, hand/wrist/arm problem, shoulder problem, osteoporosis, depression, and anxiety disorder. (Tr. 65). Pertinent medical records will be summarized in greater detail below.

**C.    The ALJ's Decision**

In the decision of January 8, 2020, the ALJ made the following findings of fact and conclusions of law (Tr. 16-26):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since May 10, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: scoliosis of thoracic and lumbar spine, osteoporosis with hip pain, migraine headaches with vertigo, anxiety, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as

      defined in 20 CFR 404.1567(a) and 416.967(a) except frequent overhead reaching, frequent climbing of ramps and stairs, no climbing of ladders, ropes, and scaffolds, frequent balancing and kneeling, occasional stooping and crouching, and no crawling. The claimant must avoid concentrated exposure to extreme cold, vibration, and hazards generally including open moving machine parts and never unprotected heights. The claimant cannot operate a motor vehicle as part of work requirement. The claimant would need the use of a cane for ambulation. The claimant can perform simple goal oriented tasks. The work must not be production rate paced or fast paced requiring daily quotas. The claimant can understand and follow simple routine rote instructions. The claimant can make simple routine decisions. The claimant can have frequent work-related contact with supervisors, coworkers, and the public. The claimant can tolerate frequent changes in the workplace setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 30, 1975 and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, since May 10, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## II. DISCUSSION

Plaintiff argues that the ALJ erred in failing to obtain an updated medical opinion regarding Plaintiff's physical functional limitations. Defendant argues there was adequate evidence for the ALJ to render an opinion as to Plaintiff's residual functional capacity (RFC), and substantial evidence supports the ALJ's decision.

**A.     LEGAL FRAMEWORK**

**1.     The Commissioner's Determination-of-Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity (SGA); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing past relevant work

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at

(PRW);[3] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling (SSR) 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments

---

20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

   **1.     Medical Records[4]**

Plaintiff's medical records show he was being treated for scoliosis, osteoporosis, depression, and pain in his neck, back, and hips prior to his alleged disability onset date. (*See, e.g.*, Tr. 378, 413, 447, 449, 510, 512, 612-14, 697-99). Plaintiff reported that his pain worsened after a fall at work. (Tr. 482.)

On May 11, 2018, Plaintiff saw Dr. Patton at Norton Healthcare. Plaintiff complained of neck and arm pain, and a physical examination showed tenderness, bony tenderness, pain, and spasm in the cervical back. (Tr. 765-66). Dr. Patton's notes indicate that a cervical CT scan showed mild degenerative disc disease at C3-C4 and C5-C6. (Tr. 765). Dr. Patton prescribed ketorolac, advised Plaintiff to follow up with a neurosurgeon and a pain clinic, and further ordered a cervical spine MRI. (Tr. 766).

On May 22, 2018, Plaintiff was seen at Norton Leatherman Spine Center for complaints of neck and arm pain. (Tr. 482). Examination showed that Plaintiff's cervical range of motion was limited by pain and stiffness. (Tr. 484). It was recommended that Plaintiff begin Forteo for his

---

[4] Because Plaintiff is only challenging the ALJ's failure to obtain a consultative examination as to Plaintiff's physical limitations, the below medical history focuses entirely on Plaintiff's physical diagnosis, symptoms, and treatments. (ECF No. 21 at 2). Furthermore, this history is not comprehensive, as it is merely included to show the progression of the medical evidence and what type of evidence was before the ALJ. Plaintiff has offered a more complete medical history in his brief (ECF No. 18 at 2-9), which the Commissioner adopted in her brief (ECF No. 20 at n.3).

osteoporosis. (Tr. 484). It was further recommended that Plaintiff get epidural injections with a pain management clinic and begin physical therapy. Plaintiff was a poor operative candidate. (Tr. 484-85).

On May 30, 2018, Plaintiff returned to Dr. Patton. Plaintiff's MRI showed herniation in C3-C4 and C4-C6. (Tr. 803). As to the spine surgeon referral, Plaintiff was "informed that he can not have any procedure performed secondary to severe osteoporosis." (Tr. 803). Dr. Patton referred Plaintiff to physical therapy and prescribed hydrocodone and gabapentin. (Tr. 805).

Due to prior pain issues, Plaintiff was already a patient at Commonwealth Pain Associates at the time of his alleged disability onset, but in early June 2018, Plaintiff's hydrocodone was increased in an effort to relieve his pain until he could receive injection therapy. (Tr. 976). At Commonwealth Pain, Plaintiff underwent multiple injections in an attempt to control his pain. He had his first cervical epidural steroid injection on June 29, 2018, (Tr. 971), and his second on July 27, 2018, (Tr. 963), which provided days of relief (Tr. 959). Plaintiff wore a cervical soft collar and showed tenderness in the thoracic spine, cervical spine, and lumbar spine. (Tr. 954-55, 959, 968). Plaintiff had severe dextroscoliosis upon inspection. (Tr. 954, 959, 968). Radiofrequency ablation was recommended but had not been approved by insurance. (Tr. 959). In one of his final visits, Plaintiff's Robaxin was increased. (Tr. 1079). In October 2018, Plaintiff was no longer going to be provided further controlled substances due to frequently using more Hydrocodone than prescribed. (Tr. 1074).

An October 2018 lumbar CT showed severe levoscoliosis with apex at L2 and a caudal angle of 42 [degrees], mild disc bulges at multiple levels but no focal significant disc herniation, canal stenosis, or neural foraminal narrowing. (Tr. 1075).

On October 26, 2018, Dr. Whitman, a non-examining state agency consultant found there was insufficient evidence to opine an RFC. (Tr. 69). Plaintiff's alleged onset date was May 10, 2018, and per 20 C.F.R. § 404.1509 there must be an impairment expected to last for a continuous period of at least 12 months.

On October 30, 2018, Dr. Saranga, a non-examining state agency consultant, reviewed records from pain management at least through September 2018 and opined the following functional limitations: lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk 4 hours, sit 6 hours, frequently climb ramps/stairs, balance, and kneel, occasionally stoop, crouch, and crawl, frequent overhead reaching bilaterally, and avoid even moderate exposure to vibration and unprotected heights. (Tr. 74-76).

On December 5, 2018, Plaintiff had an initial visit with Dr. Htin at Norton Audubon Pain Center, where Dr. Htin noted limping gait, significant tenderness in thoracolumbar spine with restricted range of motion, dextroscoliosis of the thoracic area and levoscoliosis of the lumbar area, significant bilateral thoracolumbar facet tenderness, and positive on Patrick's Test, Gaenslen's Test, and pelvic compression test. (Tr. 1341, 1478). Plaintiff's MRI showed ptosis with central disc bulge at L4-5 level, and a CT scan of the thoracic spine showed dextroscoliosis with diffuse facet arthropathy. (Tr. 1341, 1479). Dr. Htin recommended Plaintiff return in eight weeks for his first bilateral sacroiliac joint injections. (Tr. 1342, 1479). On January 9, 2019, Plaintiff returned for a sacroiliac joint injection. (Tr. 1337-38). Thereafter, Plaintiff reported a 70-80% improvement, which had continued on February 20, 2019, so Plaintiff elected to have treatment for pain in his lower thoracic and upper lumbar segment. (Tr. 1435). At that time, Plaintiff received his first thoracolumbar facet medial branch injection. (Tr. 1438-40).

On March 29, 2019, Plaintiff saw Dr. Verghis at Audobon Pain. Plaintiff reported his most recent injections had only provided relief for a couple of days. (Tr. 1581, 1588). On May 10, 2019, Plaintiff saw Dr. Verghis, who noted that Plaintiff's recent MRI was positive for multiple thoracic spondylosis, with facet arthropathy. (Tr. 1626). Dr. Verghis gave Plaintiff a thoracic epidural steroid injection, and adjusted Plaintiff's medication at Plaintiff's request for "something stronger than Norflex . . . ." (Tr. 1626-30).

An MRI on April 13, 2019, showed pronounced dextroscoliosis of the thoracic spine with secondary asymmetric facet joint arthritis most pronounced on the left lower thoracic spine, and with no evidence of disc herniation or high-grade canal stenosis. (Tr. 1624).

On April 15, 2019, Dr. Sutherland, a non-examining state agency consultant opined the following functional limitations: lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk 4 hours, sit 6 hours, <u>never</u> climb ramps/stairs, frequently balance and kneel, occasionally stoop, crouch, and crawl, frequent overhead reaching bilaterally, and avoid even moderate exposure to vibration and unprotected heights. (Tr. 112-114). Dr. Sutherland indicated what evidence she considered that was presented at the reconsideration that was not presented at the initial level, which included notes from pain management in February 2019 and notes of severe dextroscolioisis and severe levoscoliosis. (Tr. 113-114).

On August 20, 2019, Plaintiff requested that Dr. Patton prescribe a cane for his "bad days[,]" and Dr. Patton did so. (Tr. 2083).

On September 12, 2019, Plaintiff saw Dr. Verghis, who noted Plaintiff "ha[d] recently started working in a fairly physical capacity, resulting in right hip pain, midthoracic, and lower thoracic spine pain." (Tr. 2031). Dr. Verghis started Plaintiff on Percocet and increased Plaintiff's Robaxin.

(Tr. 2031).  Dr. Verghis also administered a thoracic steroid injection after counseling Plaintiff as to the risks and benefits of steroids in light of Plaintiff's osteoporosis.  (Tr. 2031-33).

A chest CT scan on October 23, 2019, showed severe s-shaped scoliosis of the thoracic lumbar spine without acute intrathoracic pathology.  (Tr. 2071).

On October 24, 2019, Plaintiff saw Dr. Patton and reported that his right hip pain had been worsening, and medications were not helping—at the time he was taking Percocet, Cymbalta, Neurontin, and Elavil.  (Tr. 2105).

### 2.     Hearing Testimony

At the hearing in November 2019, the ALJ began by asking about additional medical records from any recent doctors' visits that had not been received.  (Tr. 36-39).  The ALJ questioned whether he needed to continue the hearing to receive the records, but with no objection from Plaintiff's counsel, the ALJ decided to admit the records by reference and proceed with the hearing.  (Tr. 37-38).

Plaintiff testified he had worked in restaurants in various training and managerial capacities previously, but he had to stop because he could no longer work all of the positions that a manager was required to, and his doctor told him "[i]t was no longer safe to work."  (Tr. 39-43, 50-51).  At that point, Plaintiff had been dealing with scoliosis for years, but as he explained it, "[t]he muscles holding up the severity of the curves over the years, it's just one of those things where it eventually just caught up to me."  (Tr. 44).  According to Plaintiff, if he had to stand or sit for longer than forty minutes, he "really start[ed] to struggle."  (Tr. 45).  Plaintiff testified that he also experienced bone-on-bone pain in his hip, for which he could not take medication.  (Tr. 45).  He was told by doctors that there were no surgical remedies available to him due to his osteoporosis.  (Tr. 46).  He also

testified he was unable to have steroid injections anymore due to his osteoporosis. (Tr. 43). Plaintiff testified that he received injections for his pain, which sometimes gave him relief for up to a week. (Tr. 48-49). He was also on gabapentin and oxycodone, which normally provided three to four hours of pain relief. (Tr. 51-52). Plaintiff testified he could do small tasks around the house but had to lay down after about twenty minutes to ease his pain and get his strength back up. (Tr. 52-53).

The VE described Plaintiff's previous employment as manager, fast food services, and manager, gas station. (Tr. 58). The ALJ then provided the following hypothetical:

> [C]onsider a hypothetical individual that has the claimant's age, education, and work experience. This hypothetical person will have the following limitations: sedentary in exerting; frequent overhead reach; frequent ramps and stairs; never ladders, ropes, or scaffolding; frequent balance and kneeling; occasional stooping and crouching; never crawling; must avoid concentrated exposure to extreme cold, vibrations, hazards generally, including open moving machine parts; however, never unprotected heights; never operation of any motorized vehicle as part of a work requirement. This individual can perform simple goal-oriented tasks; can understand and following [sic] simple, routine, rote instructions; can make simple, routine decisions; can have work-related contact as follows: frequent with supervisors and coworkers and the public; can tolerate frequent changes to the workplace setting.

(Tr. 58-59). The VE testified that such a hypothetical individual could not perform Plaintiff's past work. (Tr. 59). However, there were other jobs, including document preparer, call-out operator, and parimutuel-ticket checker, that the hypothetical individual could perform. (Tr. 59). Upon further questioning from the ALJ, the VE indicated that a hypothetical individual who required a cane to ambulate could also perform those jobs. (Tr. 60). When asked by Plaintiff's attorney whether the hypothetical individual could perform those jobs if they also required an hour break in the morning and an hour break in the afternoon, the VE responded they could not. (Tr. 60-61).

At the conclusion of the hearing, Plaintiff's attorney argued that Plaintiff's conditions of cervical and lumbar spine spondylosis, as well as osteoporosis, severe lumbar spine scoliosis of the

thoracic spine, and migraine headaches, combined with his treatment, which included cervical spine injections, lumbar spine medial branch blocks, sacroiliac joint injections, and thoracic spine epidural injections, were indicative of intense and persistent pain. (Tr. 61-62). Plaintiff's attorney asserted that Plaintiff was unable to perform his PRW or other work due to such conditions and treatment. (Tr. 61-62).

### 3.     The ALJ's Decision

As referenced above, the ALJ ultimately found Plaintiff was not disabled. In formulating Plaintiff's RFC, the ALJ described Plaintiff's history of medical treatment for back and hip issues as follows:

> The claimant has received treatment for back pain through a spine specialist. These treating records show the claimant has complained of lower back pain with radiating weakness, numbness, and tingling in the lower extremities, but the examination evidence has not shown him to have positive signs of these complaints. Examination and imaging has revealed him to have lumbar and thoracic scoliosis, as well as an eventual antalgic gait that led to a prescription of a cane. It is important to note, the prescription of the cane was made by his treating health provider and not his spine specialist or pain management specialist. Even more interestingly, the cane was not prescribed until the claimant specifically asked for one "for his bad days." Examination has also revealed tenderness in the thoracic and lumbar spine. MRIs have revealed no significant central canal stenosis or foraminal stenosis of the lumbar spine, but have revealed diffuse facet degenerative changes of the thoracic spine. Due to the minimal findings, he has been treated conservatively. He has been to have [sic] success with conservative medication treatment and trigger point injections, as well as narcotic pain medication treatment. He also underwent physical therapy to strengthen the thoracic and lumbar spine, improve range of motion, stabilize the spine, and increase his ability to perform maximum lifting. The specialist also found that surgery was not needed and ultimately referred him to pain management provider. The pain management provider advised injection treatment, which the claimant underwent. The injection treatment was found to be beneficial. While he has reported minimal to no relief from medication treatment, the treating evidence does show that his condition is "managed on Neurontin, Cymbalta, Robaxin, pain cream, and Hydrocodone. [sic - no closing quotation mark] Continued neurological findings are normal without any deficits noted to be present. Overall, he continues to receive conservative treatment for his scoliosis. (Exhs 1F-9F, 13F, 15F-16F, 19F,

> 21F-22F)
>
> In addition to back pain, the claimant reports having hip pain. He has undergone testing that has revealed him to have bone mineral density at a below expected range for his age and gender. He has been given medication/supplements for osteoporosis, which has been found to be the most probable cause of his hip pain.

(Tr. 21-22). After reviewing Plaintiff's medical history, the ALJ discounted Plaintiff's complaints of disabling pain, finding "the evidence does not support that these conditions are as limiting as alleged." (Tr. 23). In particular, the ALJ noted Plaintiff's conservative treatment for his physical issues and that he "ha[d] not been found to be a candidate for surgical intervention." (Tr. 23). He further found: "Physical examinations and imaging has shown scoliosis to be present, but have otherwise been normal except for notations of an antalgic gait." (Tr. 23). The only medical opinions regarding Plaintiff's physical limitations were provided by state agency consultants, but the ALJ found those opinions were not persuasive because "[t]hese opinions are not found to be consistent with the evidence of record as updated and ongoing evidence received at the hearing level shows that the claimant is more limited than determined by the State agency consultants." (Tr. 23, 64-97, 100-139).

### 4.    Discussion

It is the claimant's duty to introduce evidence of impairments through the first four steps of the sequential process. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); 20 C.F.R. § 416.912(a) ("you have to prove to us that you are blind or disabled"); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). However, an ALJ "has a duty to explore all relevant facts and inquire into the issues necessary for adequate

development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). "The key consideration is 'whether the record contained sufficient medical evidence for the ALJ to make an informed decision' regarding the claimant's impairment." *Lehman v. Astrue*, 931 F. Supp. 2d 682, 692–93 (D.Md. 2013) (quoting *Craft v. Apfel*, No. 97-2551, 1998 WL 702296 (4th Cir. 1998)). "Where the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded." *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980) (citations omitted).

Notably, an "ALJ is under no obligation to supplement an adequate record to correct deficiencies in a plaintiff's case." *Lehman*, 931 F. Supp. 2d at 693. Further, "[a] lack of opinion evidence from a treating physician does not . . . necessarily trigger a duty to develop the record," *id.* at 694, particularly when the claimant is represented by counsel, *see Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) ("[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored.").

As recited above, the ALJ found Plaintiff's RFC to be more limited than the functional limitation opinions offered by the nonexamining state agency consultants based on updated and ongoing evidence that was received at the hearing level. (Tr. 23). For example, Dr. Patton had prescribed a cane for Plaintiff, and while the ALJ expressed some skepticism as to the prescription, he nevertheless included that a cane was required for ambulation in the RFC.[5] (Tr. 20-23). The ALJ

---

[5] There were additional physical functional limitations that the ALJ included which were not opined by the non-examining consultants: no crawling, avoid concentrated exposure to extreme cold and hazards generally including open moving machine parts, and cannot operate a

also noted that both imaging and examination showed that Plaintiff had lumbar and thoracic scoliosis. (Tr. 21). As part of the medical history review, the ALJ also cited the records that were not available at the time of the state agency consultants' review. (Tr. 22). However, the ALJ gave no indications that he found insufficient evidence to make an informed decision regarding Plaintiff's condition. Instead, by the time the ALJ performed his review, more medical records had simply been provided in addition to those that had been reviewed by the state agency consultants, and those records required the need for greater physical limitations than those to which the state agency consultants opined. Under the law, the ALJ was under no obligation to obtain additional information. *See* 20 C.F.R. 404.1519a (indicating a consultative examination may be required "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination on your claim"); *see also Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. Oct. 29, 2003) ("[T]he regulations state that the ALJ has discretion in deciding whether to order a consultative examination."); *Robinson v. Astrue*, No. 8:11-CV-03375-RMG, 2013 WL 625583, at *7 (D.S.C. Jan. 23, 2013), *report and recommendation adopted*, 2013 WL 633590 (D.S.C. Feb. 20, 2013)("The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917."); *Edmunds v. Colvin*, 2013 WL 4451224 (W.D.V.A. Aug. 16, 2013)(finding there was no abuse of discretion in failing to order a consultative examination).

Notably, this is not a case where the Commissioner failed to help a pro se claimant obtain

---

motor vehicle as part of work requirement. There were several mental functional limitations also added by the ALJ that are not at issue.

medical records. Plaintiff was represented by counsel at the hearing, and counsel only asked that the record be held open for the ALJ to receive the most recent records—he did not indicate that any additional records, examinations, or opinions were necessary. (Tr. 36-38). Indeed, counsel relied on the records before the ALJ in his closing arguments, arguing there was sufficient evidence that Plaintiff was disabled based on Plaintiff's symptoms and treatment. (Tr. 61-62). Under the effective regulations, the ALJ is only required to seek additional evidence if the ALJ cannot reach a conclusion about whether Plaintiff is disabled based upon the evidence in the case record. 20 C.F.R. § 1520b. Here, because the ALJ had sufficient medical evidence in the record[6] to determine the issue of Plaintiff's disability, the ALJ exercised his discretion and was not required to procure a consultative examination in order to determine the RFC.

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § § 20 C.F.R. §§ 404.1546(c), 416.946(c). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595. There is no requirement by an ALJ to translate opinion language into the RFC determination, as the RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). An RFC is an administrative finding of fact.[7] SSR 96-8P, 1996

---

[6] The record contains 2,147 pages.

[7] Although rescinded due to changes in 20 C.F.R. § 404.1520b(c) regarding no articulation required for issues reserved to the Commissioner, SSR 96-5p provided a succinct explanation as to the difference between an RFC finding of fact and a medical source opinion: "Even though the adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing: A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a

WL 374184, *2.[8] Further, there is always a time lapse between state agency review and ALJ review and the regulations impose no particular limit on how much time may pass between an opinion and the ALJ's decision. *Malphrus v. Saul*, No. 4:19-CV-02439-TER, 2020 WL 6193948, at *14 (D.S.C. Oct. 22, 2020)(finding the record showed the ALJ considered evidence dated after the opinions and further limited Plaintiff beyond the state agency physicians' limitations)(*citing Roberson v. Colvin*, No. CV 0:15-3486-TMC-PJG, 2016 WL 11200696, at *7 (D.S.C. Sept. 6, 2016), *report and recommendation adopted sub nom.*, 2017 WL 473922 (D.S.C. Feb. 6, 2017)).

Moreover, even assuming the record before the ALJ was not sufficient, Plaintiff fails to show he suffered any prejudice. Plaintiff argues the ALJ improperly "played doctor" by designating findings as benign when that is not the case based on the record. For example, Plaintiff argues that the ALJ characterized objective findings in the medical records as "minimal" despite the April 2019 MRI noting "'pronounced' dextroscoliosis of the thoracic spine with secondary asymmetric facet joint arthritis." (ECF No. 18 at 12 (quoting Tr. 1933)). However, it does not appear that the ALJ was describing that particular MRI as having "minimal findings" where the entirety of his statement was as follows: "Due to the minimal findings, he has been treated conservatively." (Tr. 22). The ALJ could have been describing the Plaintiff's MRIs generally or the medical records as a whole.

---

consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." SSR 96-5p(rescinded by Federal Register Notice Vol. 82, No. 57, page 15263 effective March 27, 2017).

[8] The regulations also provide that there is evidence that is inherently neither valuable nor persuasive and the SSA is not obligated to provide "any analysis about how [the SSA] considered such evidence in [their] determination or decision." 20 C.F.R. § 404.1520b(c). Evidence listed is "statements about what your residual functional capacity is using our programmatic terms about the functional exertional levels in Part 404, Subpart P, Appendix 2, Rule 200.00 instead of descriptions about your functional abilities and limitations."

Additionally, the medical records described Plaintiff's imaging as "mild" in multiple instances, and Plaintiff's physicians described "conservative" treatment, as well. (*See* Tr. 955 ("Lumbar MRI demonstrates mild disc degeneration and facet arthropathy, mild level scoliosis but no obvious canal or foraminal stenosis" on August 21, 2018), 1074 ("Lumbar MRI demonstrates mild to supination facet arthropathy with mild levoscoliosis but no obvious canal or foraminal narrowing" on October 19, 2018), 1618 (describing "conservative treatment" during previous visit in March 2019 where pain medication was increased and noting a 50% improvement in pain levels)).

To the extent objective imaging in Plaintiff's records noted severe levoscoliosis, Dr. Sutherland expressly reviewed records showing both severe levoscoliosis and severe dextroscoliosis and still offered an RFC that did not result in a finding of disability (Tr. 112-118). Plaintiff has not shown that the ALJ mischaracterized the record in that respect or that he suffered any prejudice. Plaintiff did not submit additional medical evidence to the Appeals Council or otherwise show how the Commissioner's decision would have differed if additional evidence had been present in the record.

The ALJ expressly considered all of the evidence before him, including the evidence Plaintiff's attorney relied on in arguing Plaintiff's pain and other symptoms were significant and disabling. (Tr. 61-62). The ALJ applied the correct legal standards, and the RFC is amply supported by substantial evidence.

### III. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the

Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

May 23, 2022
Florence, South Carolina

s/ Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge